Neel, J.
INTRODUCTION
This matter is before the court on the defendant Andover Bank’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6). The plaintiffs, Michael and Patricia Mills, (the “Mills”) allege that Andover Bank failed to make required disclosures and made fraudulent disclosures in connection with a 1991 mortgage transaction. They have sued under the federal Truth in Lending Act, 15 U.S.C. §1601 etseq. (“TILA") (Count I); Massachusetts Consumer Credit Cost Disclosure Act, G.L.c. 140D, §1 et seq. (“CCCDA”) (Count II); G.L.c. 93A; (Count III); fraud (Count IV); intentional misrepresentation and fraud (Count V); negligence (CountVI); and unconscionability (CountVII). Andover Bank argues that all of the Mills’ claims are barred by applicable statutes of limitation. For the reasons discussed below, Andover Bank’s motion to dismiss is allowed in part and denied in part.
BACKGROUND
In 1991, the Mills applied to Andover Bank for a thirty-year, nonpurchase money residential mortgage in order to refinance their existing mortgage. On November 22, 1991, the Mills entered into an adjustable rate mortgage with Andover Bank. Under the terms of the loan, the Mills were required to pay interest only for the first year, after which the loan would begin to be amortized. Additionally, the terms required the interest rate and monthly payment to be adjusted beginning on December 1, 1992, and every December thereafter. At the time of the loan closing, Andover Bank provided a Truth in Lending Disclosure Statement which stated an annual interest rate of 8.236%, and monthly principal and interest payments of $2194.00 to begin on December 1, 1992. Neither of these figures was marked as an estimate. The disclosure statement also had an “Adjustable Rate Feature” box to be checked off if the loan rate was adjustable. It appears that this box was not marked.
On March 21, 1997, Andover Bank first notified the Mills that it would begin to amortize the loan and that the new principal and interest payment would be $2354.13. By letter dated June 12, 1997, the Mills notified Andover Bank that they were rescinding the mortgage, and made a c. 93A demand. To support their claim to a right to rescind the loan, the Mills allege that: (1) the interest rate used to calculate the $2354.13 payment is significantly higher than the 8.236% stated in the Truth in Lending Statement (the “statement”), rendering that statement fraudulent and deceptive; (2) prior to the March 1997 notification, Andover Bank never previously adjusted the interest rate or amortized the loan; (3) because the loan’s interest rate had never been previously adjusted, Andover Bank charged an excessive interest rate; and, (4) at the 1991 loan closing, Andover Bank failed to provide the required rescission notice or to inform the Mills of their right to rescind the loan. In response to the Mills’ rescission and c. 93A demand, Andover Bank neither terminated its security interest in the property nor made a settlement offer.[2] On November 28, 1997, the Mills brought this action seeking the return of all monies paid to Andover Bank including closing costs, points, and all principal and interest payments, the cancellation of Andover Bank’s security interest in their property, a discharge of the mortgage, interest, costs, attorneys fees, and any other relief deemed appropriate.
DISCUSSION
For purposes of Mass.R.Civ.P. 12(b)(6), the Court must take the factual allegations of the complaint, as well as the inferences which can be drawn from those allegations in plaintiffs favor, as true. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. The complaint should not be dismissed for *398 failure to state a claim “unless it appears beyond doubt that the plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-6 (1957). A complaint is not subject to dismissal if it would support relief under any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
In support of its motion to dismiss, Andover Bank argues that the statutes of limitation have run on all of the Mills’ counts'. The Mills counter that they could not have discovered the fraudulent nature of the statement until March 1997, when the interest rate was adjusted for the first time. Therefore, they argue, all relevant statutes of limitation should be tolled until that time.[3]
1. The Disclosure Claims — TILA/CCCDA (Counts I and II)
a. The Statutory Framework
Under TILA/ CCCDA,[4] creditors have certain disclosure obligations when making consumer credit transactions. See 15 U.S.C. §1601 et seq; G.L.c. 140D, §1 et seq. When making a closed-end loan, like a mortgage, the creditor must disclose certain information about the cost of the credit including, in relevant part, the annual interest rate to be charged, the monthly payment due, and, if the interest rate is variable, the fact that the rate is variable.[5] See 12 C.F.R. §§226, 18(d), (f)(2), and (g), 209 C.M.R. §§32.18(5), (6)(b)(l), and (7).[6] If a creditor violates TILA/CCCDA, it is liable for statutory and actual damages, as well as attorneys fees and costs. See 15 U.S.C. §1640(a); G.L.c. 140D, §32(a). Claims for damages under TILA must be brought within one year of the violation, see 15 U.S.C. §1640(e), while damage claims under CCCDAmustbe brought within four years. See G.L.c. 260, §5A.
When the loan transaction will result in a creditor’s security interest in the consumer’s principal dwelling, TILA/CCCDA gives a consumer the right to rescind the loan transaction.[7] See 15 U.S.C. §1635(a); 12 C.F.R. §226.23(a)(1); G.L.c. 140D, §10(a); 209 C.M.R. §32.23(l)(a). The creditor is obligated to provide written notice of this right to the consumer. See 15 U.S.C. §1635(a); 12 C.F.R. §226.23(b)(l); G.L.c. 140D, §10(a); 209 C.M.R. §32.23(2)(a). The consumer’s right to rescind expires on midnight of the third business day after the consummation of the loan or the delivery of the required disclosures and rescission notice, whichever is later. See 15 U.S.C. §1635(a); 12 C.F.R. 226.23(a)(3); G.L.c. 140D, §10(a); 209 C.M.R. §32.23(l)(c). Regardless of whether all the required disclosures have been provided to the consumer, the right to rescind expires no later than four years after the consummation of the loan. See 15 U.S.C. § 1635(f) (expires three years from date of transaction); 12 C.F.R. §226.23(a)(3) (three years); G.L.c. 140D, §10(f) (four years); 209 C.M.R. §32.23(l)(c) (four years).
b. Rescission Claim
In their complaint and pursuant to all counts, the Mills have sought primarily the remedy of rescission of their loan and other rescission-related relief, entitlement to which depends upon a timely demand under TILA/CCCDA. See supra, notes 2 and 7. Andover Bank argues that the Mills’ right to rescind expired at the latest on November 22, 1995, four years after the loan was consummated and eighteen months before their rescission demand was made. The Mills argue that because the rescission forms were never provided, the loan was never consummated and the limitations period never began to run. The Mills are incorrect under the express terms of the statutes, the Mills’ right to rescind the transaction expired not later than November 22, 1995, regardless of whether the required disclosures had been provided. See 15 U.S.C. §1635(f); 12 C.F.R. §226.23(a)(3); G.L.c. 140D, §10(f); 209 C.M.R. §32.23(l)(c).[8]
The Mills further argue that the four-year limitation on the right to rescind should be tolled until March 21, 1997, because of Andover Bank’s fraudulent concealment. Putting aside for the moment whether the Mills have stated a prima facie case of fraudulent concealment, the authorities they cite do not support their assertion that the right to rescind can ever be equitably tolled, and one case plainly contradicts it. See Hubbard v. Fidelity Federal Bank, 91 F.3d 75 (9th Cir. 1996) (plaintiff did not claim rescission, nor did court discuss); King v. California, 784 F.2d 910, 913 (9th Cir. 1986) (rescission claim barred by absolute three year limitation) Jones v. TransOhio Saving Assoc., 747 F.2d 1037 (6th Cir. 1984) (plaintiff did not claim rescission).[9]
Even if the Court were to conclude that the statute of limitations on the right to rescind could be equitably tolled by a creditor’s fraudulent concealment, the Mills have not stated sufficient facts to support the application of the doctrine. To invoke the doctrine of fraudulent concealment as grounds for equitable tolling, a plaintiff must allege that the defendant actually concealed “from the person injured knowledge of the facts giving rise to a cause of action and the means of acquiring knowledge of such facts.” Frank Cooke, Inc. v. Hurwitz, 10 Mass.App.Ct. 99, 106 (1980). Further, this concealment “ ‘must be actually accomplished by positive acts done with the intention to deceive’ the plaintiff.” Connelly v. Bartlett, 286 Mass. 311, 318 (1934), quoting Maloney v. Brackett, 275 Mass. 479, 484 (1931). The Mills have not alleged facts to meet this standard.
In Counts I and II, the Mills allege that Andover Bank violated TILA/CCCDA by (1) providing a fraudulent and deceptive Truth in Lending statement which listed the wrong interest rate and the wrong monthly principal and interest payments, and (2) failing to provide written notice of the right to rescind the transaction.[10] The Mills argue that the fraudulent *399 nature of the 1991 statement was not discoverable until they were first notified that the rate was to be adjusted, and that such conduct amounts to fraudulent concealment. Apparently, the Mills are arguing that, because the 8.236% interest rate and $2194.00 monthly payment stated on the 1991 Truth in Lending Statement was not marked as an estimate, or not marked as variable, then any adjustment of that rate, and in particular the 1997 adjustment, renders that statement fraudulent, and fraudulently concealed until the rate was adjusted. This argument might have merit had the Mills not signed an adjustable rate mortgage note. That note put the Mills on notice, on the day of the loan closing, that the interest rate was variable.[11] In fact, one of their allegations is that Andover Bank had never previously adjusted the interest rate, thereby charging an excessive rate. The Mills, therefore, cannot sustain an argument that Andover Bank concealed the fact that the loan had an adjustable rate, only that the disclosures omitted this fact. Assuming that these inaccurate disclosures could provide a basis for relief under any theory of liability, there was no fraudulent concealment, and therefore no tolling. See G.L.c. 260, §12; Lynch v. Signal Finance Co., 367 Mass. 503, 507-08 (1975) (stating that for fraudulent concealment to apply, the cause of action must be concealed from the plaintiff, and that “(e]ven in cases of fraud, in the absence of a fiduciary relation, there is no concealment by mere failure to disclose if the aggrieved party has full means of detecting the fraud”). Any right to rescind that the Mills may have had expired on November 22, 1995, and the rescission claim is, therefore, barred.
c. Damage Claims
Although they did not specifically seek a remedy other than rescission, the Mills may be able to recover civil damages against Andover Bank. The same conduct which the Mills allege gives them a right to rescind — providing a fraudulent and deceptive Truth in Lending statement which listed the wrong interest rate and the wrong monthly principal and interest payments, and failing to provide written notice of the right to rescind the transaction — could support a damage claim under TILA/CCCDA. However, unless tolling applies, any damages claim will be barred under both TILA and CCCDA as the violations took place on November 22, 1991, six years before the filing of the complaint. See 15 U.S.C. §1640(e) (one year statute of limitations for damage claim under TILA); G.L.c. 260, §5A (four year statute of limitations for consumer rights claim, including claim under CCCDA). As discussed above, the Mills have not alleged facts to support application of the fraudulent concealment doctrine, and the Court will not, therefore, toll the applicable statutes of limitation. The time for the Mills to raise damages claims on the initial disclosures expired under TILA on November 22, 1992, and under CCCDA on November 22, 1995. Any damages claims on the initial disclosures are therefore barred.
Counts I and II could be dismissed in their entirety except for the allegations that the loan interest rate was never adjusted and that the loan was never amortized. Although the Mills have not specifically pled or argued this issue, such allegations could support a TILA/CCCDA claim. Both the federal and state statutory schemes provide that the adjustment of an interest rate is an event which requires that new disclosures be provided to the consumer. See 12 C.F.R. §226.20(c), 209 C.M.R. §32.20(3). These new disclosures must “reflect the terms of the legal obligation between the parties.” See 12 C.F.R. §226.17(c)(1); 209 C.M.R. §32.17(3)(a). If the Mills were charged the wrong interest rate, then Andover Bank’s subsequent disclosures to the Mills which listed the incorrect rate would not reflect the legal obligation between the parties, and would, therefore, be a violation of the disclosure acts. See Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996).
However, unless equitable tolling applies, the Mills’ recovery under TILA/CCCDA for the subsequent disclosures will be limited to the usual statutory limitation period. The Mills have made no allegation that Andover Bank concealed the fact that they were not adjusting the rate. See G.L.c. 260, §12; Lynch v. Signal Finance Co., 367 Mass. 503, 507-08 (1975). Simply by looking at their monthly bills, the Mills would have noticed that the rate remained constant. The 1997 notification of an increase in the interest rate, pursuant to an adjustable rate mortgage contract, does not render the previous failures to adjust undiscoverable, let alone fraudulent. Therefore, the statutes of limitation will not be tolled and Andover Bank’s potential liability for subsequent required disclosure statements is limited under TILA to violations occurring on or after November 28, 1996, one year prior to the filing of the complaint, see 15 U.S.C. § 1640(e), and under CCCDA, to violations occurring on or after November 28, 1993, four years prior the filing of the complaint. See G.L.c. 260, §5A.
2. C. 93A claims (Count III)
The Mills claim that Andover Bank’s conduct which forms the basis of their complaint under TILA/CCCDA also violated c. 93A. While it is true that violations of CCCDA are per se violations ofc. 93A, see G.L.c. 140D, §34, it is also true that c. 93A claims must be brought within four years after the cause of action accrues. See G.L.c. 260, §5A. Because the Court has previously determined that it is not appropriate to toll the statutes of limitation in this case, any c. 93A claim related to defects in the initial disclosures are time barred. Further, any c. 93A claims related to defects in the subsequent disclosures, or for failure to amortize the loan or adjust the interest rate, are limited to events occurring on or after November 28, 1993, or four years prior to the filing of the complaint.
*400 3.Fraud /Intentional Misrepresentation (Count IV and V)
The Mills allege that Andover Bank engaged in fraud and misrepresentation by providing a fraudulent and deceptive disclosure statement which listed the wrong interest rate and the wrong payment amount. If there was any fraud involved with the initial disclosure, it was discoverable on the date of the closing because the Mills were on notice that the loan rate was variable. See Bond Leather Co. v. Q.T. Shoe Mfg.. Co., 764 F.2d 928, 935 (1st Cir. 1985) (stating that misrepresentation “requires a showing that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducting [sic] the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage” (citation omitted)); see also Lynch v. Signal Finance Co., 367 Mass. 503, 507-08 (1975). There is, therefore, no occasion to toll that statute of limitations and this claim is barred. See. G.L.c. 260, §2A.
4.Negligence (Count VI)
In Count VI, the Mills further allege that “[I]n the course of the consumer credit transaction . . . the Defendant made one or more statements about the nature and terms of the transaction which were false and/or inaccurate,” and that such conduct was negligent. Any negligence claim arising from statements made in the course of the 1991 closing accrued in 1991, as the Mills were on notice that their loan rate was adjustable. See Pagliuca v. City of Boston, 35 Mass.App.Ct. 820, 824 (1994) (tort cause of action accrues when plaintiff is injured or when plaintiff knows or reasonably should know that he has been injured). There has been no showing of fraudulent concealment, see Lynch v. Signal Finance Co., 367 Mass. 503, 507-08 (1975), and this claim is therefore barred by the relevant three year statute of limitation. See G.L.c. 260, §2A.
5.Unconscionability (Count VII)
Finally, the Mills allege that the loan contract was unconscionable due to numerous circumstances, some of which have no relevance to an unconscionability inquiiy.[12] The Mills’ conclusory allegations as to undue influence, adhesion, and gross disparity between the cost of loan and the benefit conferred are insufficient. No facts are alleged in the complaint in support of these claims. See Mass.R.Civ.P. 9(b); Cheney v. Automatic Sprinkler Corp. of America, 377 Mass. 141, 149 (1979) (conclusory allegations not supported by reference to facts did not warrant the legal consequences asserted). On its face, the transaction appears to be an ordinary mortgage closing at which the Mills were given notice of the alleged TILA/CCCDA violations. In any event, Count VII is barred by the relevant statute of limitations, see G.L.c. 260, §2 (statute of limitations for contract actions is six years after cause of action accrues), and there is nothing in the complaint to suggest that the statute should be tolled because of fraudulent concealment. See Connelly v. Bartlett, 286 Mass. 311, 318 (1934).
ORDER
For the reasons stated above, the defendant Andover Bank’s motion to dismiss is DENIED as to claims for damages from TILA violations (Count I) on or after November 28, 1996; as to claims for damages from CCCDA violations (Count II) on or after November 28, 1993; and for c. 93A violations (Count III) on or after November 28, 1993, and is otherwise ALLOWED.

Under TILA and CCCDA, once a consumer has validly rescinded his or her loan, the security interest becomes void, and within 20 days of the rescission, the creditor must return all monies paid by the obligor and must take action to release its security interest in the property. Once these steps are performed by the creditor, the consumer/obligor is required to tender the money or the property to the creditor. If the creditor fails to take possession of the property within 20 days of its tender, the consumer may retain the property without obligation to pay for it. See 15 U.S.C. §1635(b); 12 C.F.R. §§226.23(d)(l)-(3); G.L.c. 140D, §10(b); 209 C.M.R. §§32.23(4) (a)-(c).

 The parties also dispute whether the time limitations related to TILA/CCCDA are statutes of limitation or statutes of repose. The United States Supreme Court recently decided the issue as to TILA when it held that the right to rescind granted under TILA is extinguished by the § 1635(f) three-year time limitation. See Beach v. Ocwen Federal Bank, 118 S.Ct. 1408, 1412-13 (1998). The issue is undecided as to the Massachusetts act. In light of the rulings herein, and for purposes of discussion only, the Court will refer to all of the statutory time constraints as statutes of limitation.

Because the Massachusetts act was closely modeled on the federal act, see Mayo v. Key Financial Services, Inc., 424 Mass. 862, 864 (1997) (also stating that federal court decisions are instructive in construing parallel Massachusetts statutes and regulations); Bizier v. Globe Financial Services, Inc., 654 F.2d 1, 2 (1st Cir. 1981); In re Desrosiers, 212 B.R. 716, 722 (Bkrtcy. D.Mass. 1997) (CCCDA provisions parallel TILA and should be construed in accordance with federal law), the Court will treat TILA and CCCDA as one and the same. The only difference between the statutory schemes relevant to this case are the varying statutes of limitation, which will be addressed as they arise.

he disclosure must also state that other, required, variable rate disclosures were previously provided, See 12 C.F.R. §226.18(f)(2)(ii); 209 C.M.R. §32.18(6)(b)(2). The previous disclosures the creditor must provide include: (1) the fact that the rate, payment, or term of the loan may change; (2) the index rate used in making adjustments; (3) an explanation of how the interest rate and payment will be adjusted; and (4) the frequency of rate and payment changes. See 12 C.F.R. §§226.19(b)(2)(i), (ii), (iii) and (vi); 209 C.M.R. §§32.19(2)(b)(l), (2), (3), and (6).

The disclosure statement must also state the identity of the creditor, the amount financed and an itemization of that amount, the finance charge, the payment schedule, the total amount of payments, whether the loan has a demand feature, the total sale price, any prepayment penalties, any late charges, and whether the creditor is acquiring a security interest in the property. See 12 C.F.R. §226.18; 209 C.M.R. §32.18.

There is some authority for the proposition that a Massachusetts resident would have no right of rescission against a Massachusetts creditor under TILA, but would be able to *401 pursue such a remedy solely under CCCDA. See In re Desrosiers, 722 B.R. 716, 722 n.6 (Bkrtcy. D.Mass. 1997) (explaining that the Federal Reserve Board exempted credit transactions subject to CCCDAfrom portions of TILA, but not from the civil liability provisions), citing 48 Fed. Reg. 14882, 14890 (1983), and 12 C.F.R. §226.29(b)(l). For the purposes of this motion, the Court will assume that a debtor could pursue a rescission claim under both statutes.

 15 U.S.C. §1635(f) provides:
An obligor’s right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor.
G.L.c. 140D, §10(f) provides:
An obligor’s right of rescission shall expire four years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor.

But see e.g. Moor v. Travelers Insurance Co., 784 F.2d 632, 633 (5th Cir. 1986) (holding tolling not applicable to particular claim for rescission, but stating that to claim the doctrine, a plaintiff must show that the defendant “concealed the reprobated conduct and despite due diligence, he was unable to discover that conduct”); see also Bokros v. Associates Finance, Inc., 607 F.Sup. 869, 873-74 (D.C. Ill. 1984) (fraudulent concealment can toll statute of limitation on affirmative action for rescission under TULA, but not in circumstances of case). These cases may have been partially overruled by Beach v. Ocwen Federal Bank, 118 S.Ct. 1408, 1409 (1998), which held that the federal right of rescission is extinguished at the end of the three-year time limitation. See supra, note 3.

In addition, the Mills claim that Andover Bank violated TULA/CCCDA by failing to provide a copy of the appraisal, failing to amortize the mortgage, and charging an interest rate in excess of the terms of the adjustable rate mortgage. However, the Mills have not cited to any statute or other authority, nor could the Court locate any, that providing a copy of the appraisal is required by TILA/CCCDA. Furthermore, while failing to amortize a loan and charging an excessive interest rate may raise other issues, these allegations have no bearing on whether the initial disclosure statement was accurate for purposes of TILA/CCCDA.

Additionally, there is no claim that the variable rate disclosures required by the regulations were not provided. See 12 C.F.R. §226.19(b) and 209 C.M.R. §32.19(2). Like the note, these disclosures provided notice to the Mills about the variable nature of the loan. See supra, note 5.

Unconscionability of a contract is measured at the time the contract was entered into. See Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 291 (1980). Therefore, a subsequent raising of the interest rate or failure to amortize the loan would be irrelevant to this issue.