ANAWAN INSURANCE AGENCY, INC., & another[1] *vs.* DIVISION
OF INSURANCE.

Suffolk. January 6, 2011. - April 29, 2011.

Present: SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Practice, Civil,* Statute of limitations. *Limitations, Statute of. License. Insurance,* Agent, Unfair act or practice. *Statute,* Construction.

This court concluded that the four-year statute of limitations provided by
G. L. c. 260, § 5A, applies to actions brought under G. L. c. 175, § 177
(barring compensation of any person for acting as an insurance agent or
broker who is not then duly licensed as an insurance broker). [596-598]
This court concluded that in actions brought by the Division of Insurance to
enforce G. L. c. 175, § 177, the discovery rule applies to toll the four-year
statute of limitations provided by G. L. c. 260, § 5A, until the cause of ac-
tion is discovered or reasonably should have been discovered, where § 5A
draws no distinctions based on the specific nature of the consumer protec-
tion claim being brought; who is bringing the consumer protection case or
claim; or the nature of the relief being sought. [598-600]
This court concluded that in proceedings before the Division of Insurance
(division), arising from claims that the plaintiffs, an insurance agency and
a person who was its officer and director, violated G. L. c. 175, § 177, and
G. L. c. 176D, § 2, by paying commissions to an unlicensed broker, the
Commissioner of Insurance, acting through the division, permissibly could
impose separate penalties under both statutes. [600-602]

CIVIL ACTION commenced in the Superior Court Department on
November 6, 2007.

The case was heard by *Bruce R. Henry,* J., on a motion for
judgment on the pleadings.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Daniel J. Hammond,* Assistant Attorney General, for the
defendant.

*Stephen G. Michaels* for the plaintiffs.

BOTSFORD, J. This case arises out of an administrative enforce-

[1]Stephen G. Michaels.

ment action brought by the Division of Insurance (division) against Anawan Insurance Agency, Inc., and Stephen G. Michaels, an officer and director of Anawan (collectively, Anawan), charging Anawan with paying commissions to an unlicensed broker in violation of G. L. c. 175, § 177, and G. L. c. 176D, § 2. The appeal, which is before us on further appellate review, raises three principal issues: (1) whether the statute of limitations set out in G. L. c. 260, § 5, or G. L. c. 260, § 5A, governs enforcement actions brought by the division under G. L. c. 175, § 177; (2) whether the discovery rule applies to the appropriate limitations statute; and (3) whether the division is authorized to levy sanctions against Anawan under G. L. c. 176D, § 2, under G. L. c. 175, § 177, or under both statutes.

After a hearing, the division's presiding officer (hearing officer) concluded that the four-year statute of limitations in G. L. c. 260, § 5A, governed an enforcement action brought under G. L. c. 175, § 177; applied the discovery rule to find that statute's limitations period tolled for a period of time; and, while finding that Anawan had committed violations of both G. L. c. 175, § 77, and G. L. c. 176D, § 2, assessed fines only for the c. 176D, § 2, violations under G. L. c. 176D, § 7. The Commissioner of Insurance (commissioner) affirmed the hearing officer's decision, and a judge in the Superior Court, acting on Anawan's appeal under G. L. c. 30A, § 14, also affirmed the division's decision.[2] In deciding Anawan's appeal from the Superior Court judgment, however, the Appeals Court concluded that while G. L. c. 260, § 5A, was the controlling statute of limitations, the discovery rule did not apply and the division was barred from assessing fines for improper insurance transactions occurring earlier than four years before the administrative enforcement action was commenced; the Appeals Court also decided that fines could only be assessed against Anawan under G. L. c. 175, § 177, and not G. L. c. 176D, § 7. *Anawan Ins.*

---

[2]The parties and the Superior Court refer to the administrative decision being reviewed in this case as the decision of the Division of Insurance (division). We do as well but note that the decision of the Commissioner of Insurance (commissioner) appears to have been the final decision of the agency for purposes of judicial review under G. L. c. 30A, § 14 (1). Because the commissioner essentially adopts the division's hearing officer's decision, nothing of substance turns on the distinction.

*Agency, Inc.* v. *Division of Ins.*, 76 Mass. App. Ct. 447, 451-455 (2010) (*Anawan*). Accordingly, the court vacated the Superior Court judgment and directed that the matter be remanded to the commissioner for further action consistent with the court's decision. *Id.* at 455. We granted the division's application for further appellate review, and for the reasons that follow, affirm the judgment of the Superior Court.[3]

1. *Background.* The Appeals Court sets out the undisputed facts of this case, taken from the hearing officer's decision and the exhibits that were admitted in the administrative proceeding. See *Anawan, supra* at 448-449. We summarize those facts here. The division received two anonymous letters in 1999 stating, among other allegations, that Anawan, in addition to its principal place of business in the West Roxbury section of Boston, had improperly begun operating out of a second location at 76 Shirley Avenue in Revere; one of the letters alleged that the name of the agency operating from that address was "Handel Ins." The division assigned an investigator to investigate the facts alleged in the anonymous letters. The investigation took a very long time, for reasons not explained in the record. During its course, the investigator learned that Kuntthy Prum was doing business as Handel Insurance Agency at 76 Shirley Avenue in Revere, that Prum had been licensed as an insurance broker from May 27, 1994, for three years (i.e., until May, 1997), but had not renewed his license thereafter. On June 1, 2004, the investigator sent a letter notifying Anawan that it had been the subject of a complaint received by the division, and requesting information. The letter asked specifically whether Anawan had ever employed Prum and if so, the dates of his employment and the insurance carrier or carriers with which Prum had placed insurance policies. On June 23, 2004, Anawan, through Michaels, responded, informing the division that Prum had brokered insurance business through Anawan from January 7, 1997, through December 31, 2001, and listing all the commis-

---

[3]Anawan briefly asserts that the judge's denial of its motion for judgment on the pleadings was itself arbitrary and capricious because the judge did not give an explanation for his decision. We do not consider such "bald assertions of error, lacking legal argument and authority, [which are] thus not advanced in a manner which rises to the level of appellate argument." *Zora* v. *State Ethics Comm'n,* 415 Mass. 640, 642 n.3 (1993).

sions paid to Prum. On October 25, 2004, the division commenced its enforcement action. Specifically, the division issued an order to show cause alleging that Anawan had violated both G. L. c. 175, § 177, by paying commissions to Prum at a time when he was not licensed to transact insurance business in the Commonwealth, as well as G. L. c. 176D, § 2, by engaging in unfair or deceptive acts or practices in the business of insurance.[4] The division sought imposition of a fine or civil penalty against Anawan for every separate violation of these two statutes.

Anawan filed a response to the division's order to show cause in November, 2004. After the denial of Anawan's two separate motions for summary decision, an evidentiary hearing was held on March 28, 2006, before a hearing officer of the division. The hearing officer issued his decision with "compendious findings" (*Anawan, supra* at 449) in May, 2007.

The hearing officer ruled that Anawan had violated both G. L. c. 175, § 177, and G. L. c. 176D, § 2, in failing "to ascertain whether Prum had renewed his license before soliciting business from, accepting applications from and paying compensation to Prum after his license expired on May 27, 1997."[5] Applying the four-year statute of limitations set out in G. L. c. 260, § 5A, the hearing officer determined that the division had proved (1) 278 violations of both G. L. c. 175, § 177, and G. L. c. 176D, § 2, occurring within four years of the filing of the order to show cause on October 25, 2004 — that is, between October 25, 2000, and October 25, 2004; and (2) by application of the discovery rule, twenty-two violations occurring before November of 2000.[6] The hearing officer assessed a fine under

[4]The order to show cause also named Michaels as individually liable pursuant to G. L. c. 175, § 174, for Anawan's alleged violation of G. L. c. 175, § 177, and G. L. c. 176D, § 2.

[5]Other issues not relevant to this appeal were also raised and resolved by the hearing officer in his decision.

[6]As to these pre-November, 2000, violations, the hearing officer found that while they all occurred more than four years before the enforcement proceeding began with the order to show cause, "the earliest date upon which any argument *possibly* can be made that the [d]ivision 'should have known' of the improper insurance business transactions between Anawan and Prum was not until sometime long after October 25, 2000," meaning that the four-year limitation period set out in G. L. c. 260, § 5A, was tolled until after that date, and therefore the violations were not time barred.

G. L. c. 176D, § 2, of one hundred dollars for each of the 300 (278 plus twenty-two) violations of that statute that he found proved, for a total of $30,000. He did not assess any separate penalty for the parallel 300 violations of G. L. c. 175, § 177.

2. *Discussion.* We review in this case the division's decision under G. L. c. 30A, § 14, and in doing so, we are called on to interpret a number of statutes that bear on the validity of that decision. The court reviews "questions of statutory interpretation de novo," *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006), giving "substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its administration [and] enforcement." *Id.* We may set aside or modify the division's decision if we determine "that the substantial rights of any party may have been prejudiced because," among other reasons, the decision is based on an error of law or is arbitrary, capricious, or an abuse of discretion. G. L. c. 30A, § 14 (7). *Attorney Gen.* v. *Commissioner of Ins.*, 450 Mass. 311, 318 (2008).

a. *Statute of limitations.* General Laws c. 175, § 177, prohibits an insurance company, among others, from paying an individual "who is not then duly licensed as an insurance agent of the company for which he assumes to act or as an insurance broker."[7] The first question of statutory interpretation posed is, what statute of limitations governs actions brought under § 177? Anawan contends that the appropriate statute is G. L. c. 260, § 5. That statute imposes a two-year limitation period with respect to actions for penalties brought by the Commonwealth (which encompasses the division), but expressly states that it does not apply to "any action set forth in [G. L.

[7]General Laws c. 175, § 177, as amended through St. 1992, c. 118, §§ 14, 15, in effect at all times relevant to this action, provided in part:

"No company and no officer, agent or employee thereof, and no duly licensed insurance broker, shall, directly or indirectly, pay or allow or offer or agree to pay or allow compensation or anything of value to any person, excepting an officer of a domestic company acting under [G. L. c. 175, § 165], for acting in this commonwealth as an insurance agent or as an insurance broker, both as defined in [c. 175, § 162], who is not then duly licensed as an insurance broker. . . . Whoever violates any provision of this section shall be punished by a fine of not less than twenty nor more than two hundred dollars."

c. 260, § 5A]."[8] Section 5A of G. L. c. 260, in turn, applies to "[a]ctions arising on account of violations of any law intended for the protection of consumers, including but not limited to the following: . . . [G. L. c. 176D]." Section 5A does not expressly mention actions for violations of G. L. c. 175, § 177. Given the absence of express reference, Anawan's argument, which is very brief, appears to be that the statute of limitations in G. L. c. 265, § 5, and *only* in that statute, applies to actions for fines or penalties; and that because the division's enforcement action was for fines, G. L. c. 260, § 5, must define the permissible limitations period. Like the Superior Court judge and the Appeals Court, we agree with the division that G. L. c. 260, § 5A, is the applicable statute of limitations for actions brought under G. L. c. 175, § 177.[9]

"The essential nature of the right asserted determines the appropriate statute of limitations." *Micera* v. *Neworld Bank,* 412 Mass. 728, 731 (1992).[10] See *Nantucket* v. *Beinecke,* 379

---

[8]General Laws c. 260, § 5, provides:

"Actions for penalties or forfeitures under penal statutes, if brought by a person to whom the penalty or forfeiture is given in whole or in part, shall be commenced only within one year next after the offence is committed. But if the penalty or forfeiture is given in whole or in part to the commonwealth, an action therefor by or in behalf of the commonwealth may be commenced only within two years next after the offence is committed. *This section shall not apply to any action set forth in [§ 5A]*" (emphasis added).

[9]Anawan does not contest that in light of the explicit mention of c. 176D in G. L. c. 260, § 5A, the division's separate charge that Anawan violated G. L. c. 176D, § 2, is expressly within the ambit of G. L. c. 260, § 5A, and, therefore, the four-year limitation period prescribed by § 5A applies to it. It remains necessary to resolve whether § 5A also applies to actions under G. L. c. 175, § 177, because the hearing officer's conclusion that Anawan had committed 300 violations of c. 176D, § 2, was based entirely on his determination that Anawan had committed that many violations of G. L. c. 175, § 177, by paying at least 300 commissions to Prum, an unlicensed insurance broker, between 1998 and the end of 2001.

[10]In *Micera* v. *Neworld Bank,* 412 Mass. 728 (1992), this court concluded that an action brought under G. L. c. 183, § 60, which imposes conditions on interest provisions in renewal notes secured by residential mortgages, was a statute "designed to benefit consumers by shielding them from sharp practices" of residential mortgage lenders, *id.* at 732, and was essentially a "law intended for the protection of consumers" within the scope of G. L. c. 260, § 5A (although not specifically listed in § 5A). *Id.* at 731-733.

Mass. 345, 347-349 (1979). The essential nature of the right under G. L. c. 175, § 177, reflects a legislative intent to protect consumers from unlicensed practitioners in the field of insurance. See *Commonwealth* v. *Roswell,* 173 Mass. 119, 121 (1899) ("It is within the proper exercise of the police power of the Commonwealth to require that persons acting as insurance brokers or insurance agents shall be licensed, in order that the business may be in the hands of trustworthy persons"). See also *Deluty* v. *Commissioner of Ins.,* 7 Mass. App. Ct. 88, 91 (1979) ("Trustworthiness and competence are thus requirements for the issuance of a broker's license [whether or not they are exhaustive]"). Given this consumer-protective intent or purpose, G. L. c. 175, § 177, clearly has "characteristics that are common to consumer protection statutes." *Micera* v. *Neworld Bank, supra* at 732. And as was true in that case, we conclude here that § 5A's four-year statute of limitations applies to actions under G. L. c. 175, § 177.[11]

b. *Discovery rule.* We turn to the issue whether the discovery rule applies to G. L. c. 260, § 5A; as the division points out, that statute provides a four-year limitation period to begin "after the cause of action accrues," but is silent on when the accrual clock begins to run. The discovery rule tolls a statutorily mandated limitations period until the cause of action is discovered or reasonably should have been discovered by the plaintiff. See, e.g., *Friedman* v. *Jablonski,* 371 Mass. 482, 484-485, 487 (1976); *Hendrickson* v. *Sears,* 365 Mass. 83, 91 (1974). As previously mentioned, the hearing officer determined that the discovery rule did apply, and on the evidence presented, ruled that the statute of limitations period did not begin to run until well after October 25, 2000, so that when the division initiated this proceeding on October 25, 2004, it was entitled to impose penalties for violations of c. 175, § 177, occurring more than four years before that date. The Appeals Court, however, concluded that the discovery rule did not apply. It reasoned that

---

[11]Anawan argues that G. L. c. 175, § 177, was promulgated by statute in 1919, before "laws intended for the protection of consumers" within the meaning of G. L. c. 260, § 5A, were passed, and therefore c. 175, § 177, cannot be found to come within the ambit of c. 260, § 5A. The argument fails. General Laws c. 140, §§ 96 and 110, both expressly listed in c. 260, § 5A, were first enacted in 1898. See St. 1898, c. 577, §§ 1, 10.

G. L. c. 175, § 177, was a statute imposing penalties for its violation, that therefore a cause of action under its terms "accrued" at the time of violation, and that nothing in the language of c. 260, § 5A, suggested that tolling the limitations period in such a case would be necessary. *Anawan*, 76 Mass. App. Ct. at 451-452.[12]

In reaching this conclusion, the Appeals Court cited and relied on Federal cases construing statutes of limitations solely applicable to actions for enforcement of civil fines or penalties. See *Anawan*, *supra* at 451-452, citing *3M Co.* v. *Browner*, 17 F.3d 1453, 1455, 1460-1463 (D.C. Cir. 1994) (construing 28 U.S.C. § 2462, which establishes statute of limitations applicable to action or proceeding "for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise"; court rejected Environmental Protection Agency's argument that discovery rule should apply to toll running of statute's limitations period until its "discovery" of company's violations of Toxic Substances Control Act, 15 U.S.C. §§ 2601-2629, concluding that limitations period began to run when company committed violations); and *Unexcelled Chem. Corp.* v. *United States*, 345 U.S. 59, 65 (1953) (construing statute of limitations in Portal-to-Portal Act, 29 U.S.C. § 255: "It is [the] breach of duty [by regulated entity], not its discovery, that normally is controlling"). But the limitations statutes at issue in these cases pertained exclusively to actions brought to recover civil fines, penalties, or forfeitures. In that respect, they are more like the statute of limitations set out in G. L. c. 260, § 5, which similarly applies *only* to "[a]ctions for penalties or forfeitures under penal statutes." As discussed, however, c. 260, § 5, explicitly disclaims any intent to reach actions governed by G. L. c. 260, § 5A, and by its terms, § 5A covers not only actions for fines or penalties brought by a government entity, but also actions for

---

[12]The division argues that the issue of the discovery rule's application to G. L. c. 260, § 5A, was not raised before the Appeals Court, and the Appeals Court therefore erred in raising the matter on its own. While we agree that "[a]s a fundamental principle, appellate courts should not reach out to decide issues that have not been briefed by any party," *Bongaards* v. *Millen*, 440 Mass. 10, 28 (2003), it is not wholly clear whether the Appeals Court reached out to decide an unbriefed issue; Anawan's brief before the Appeals Court may possibly be read as raising the discovery rule question.

"damages . . . or other relief and brought by *any* person" (emphasis added). This court has previously concluded that the discovery rule applies to § 5A's limitations period in the context of an action brought by a private "person" under G. L. c. 93A. See *Lambert* v. *Fleet Nat'l Bank*, 449 Mass. 119, 126 (2007). See also *Albrecht* v. *Clifford*, 436 Mass. 706, 714-715 (2002). Where G. L. c. 260, § 5A, draws no distinctions based on (1) the specific nature of the consumer protection claim being brought[13]; (2) who is bringing the consumer protection claim or case; or (3) the nature of the relief being sought (e.g., whether civil penalties, monetary damages, or restitution), and consistent with our interpretation of this statute in the cases just cited, we read § 5A to permit application of the discovery rule in an action brought by the division to enforce G. L. c. 175, § 177, just as it applies to causes of action brought by private individuals under G. L. c. 93A.[14]

c. *Damages.* As mentioned earlier, the division's hearing officer found Anawan to have committed multiple violations of both G. L. c. 175, § 177, and G. L. c. 176D, § 2,[15] but assessed fines only for the violations of c. 176D, § 2, and did so as provided under G. L. c. 176D, § 7.[16] The Superior Court affirmed

---

[13]For example, nothing in G. L. c. 260, § 5A, distinguishes between an action brought under one of the statutes expressly mentioned in the section — such as G. L. c. 93A — and one that § 5A also covers because it arises out of a claim of violation of "any law intended for the protection of consumers."

[14]The Legislature's decision to use different language in G. L. c. 260, §§ 5 and 5A, to describe when an action must be commenced is also noteworthy. In § 5, applicable only to actions for penalties or forfeitures, an action by the Commonwealth "may be commenced only within two years next after the offence is committed." In § 5A, the action "shall be commenced only within four years next after the cause of action accrues." The Legislature thus was extremely clear that it did not intend a discovery rule to apply to actions governed by § 5, but evinced no such intent in actions governed by § 5A.

[15]General Laws c. 176D, § 2, provides:

"No person shall engage in this commonwealth in any trade practice which is defined in this chapter as, or determined pursuant to [G. L. c. 176D, § 6,] to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

[16]General Laws c. 176D, § 7, directs that if, after hearing, the commissioner determines that a "person" (defined in G. L. c. 176D, § 1 [*a*], to include an individual or an entity engaged in the business of insurance) has

this determination, but the Appeals Court concluded instead that the division could only impose a penalty on Anawan under c. 175, § 177,[17] and not under c. 176D, §§ 2 and 7. In that court's view, c. 176D, § 7, is "a statute of general application," while c. 175, § 177, is "a self-contained statute, prescribing specific remedies for its violation." *Anawan*, 76 Mass. App. Ct. at 454, quoting *Reiter Oldsmobile, Inc. v. General Motors Corp.*, 378 Mass. 707, 711 (1979). Accordingly, the court ruled, the penalty imposed on Anawan must be confined to the specific one prescribed by c. 175, § 177, alone. *Anawan, supra* at 454-455. We disagree.

General Laws c. 176D, § 2, precludes trade practices connected to the business of insurance that are unfair or deceptive; G. L. c. 176D, § 7, provides the penalties for violations of c. 176D. See notes 15 and 16, *supra*. As the Appeals Court stated, G. L. c. 176D as a whole, including c. 176D, § 7, is a statute that applies generally "to all unfair practices in the insurance industry." *Anawan, supra* at 454. But that being said, G. L. c. 176D, § 12, provides that "[t]he powers vested in the commissioner by this chapter, *shall be additional to* any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts, and practices hereby declared to be unfair or deceptive" (emphasis added). In light of the unambiguous language of c. 176D, § 12, we think it clear that in a case such as this one, where violations have been found of both a specific statute such as c. 175, § 177, regulating one aspect of the insurance industry, and the more general c. 176D, the commissioner, acting through the division, permissibly may impose separate penalties under both statutes.[18] Contrast *Reiter Oldsmobile, Inc. v. General Motors Corp.*,

---

engaged in unfair or deceptive acts or practices, that person "shall be punished by a fine of not more than one thousand dollars for each and every [such] act or practice."

[17]General Laws c. 175, § 177, as in effect (see note 7, *supra*), prescribed that a fine of "not less than twenty nor more than two hundred dollars" be imposed on whoever "violates any provision of this section."

[18]That the hearing officer decided in this case to impose penalties under only one of the statutes does not suggest a different conclusion. Rather, we consider the hearing officer's decision to limit the penalty as a discretionary determination that was well supported by the evidence of mitigating circumstances before him.

*supra* (penalty can be assessed only under G. L. c. 93B, where that statute was enacted after G. L. c. 93A, and imposes penalties specifically for one industry, in contrast to general applicability of c. 93A).[19]

3. *Conclusion.* The judgment of the Superior Court is affirmed.

*So ordered.*

---

[19]Anawan makes an argument that St. 2002, c. 184, § 109, amending G. L. c. 175, § 177, applies to this case and the amended statute requires that the division prove any violation was knowing — which, Anawan claims, cannot be shown here. For the reasons stated by the Appeals Court, the amended statute is not applicable to this case. *Anawan Ins. Agency, Inc.* v. *Division of Ins.*, 76 Mass. App. Ct. 447, 452-453 (2010).